UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERNEST ALEXIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>MARKENS NICOLAS; US AUTO STORAGE LLC a/k/a PRIME PARK JFK; AIRLOT SYSTEMS LLC d/b/a AIRLOT and/or ECONOPARK; JFK LONG TERM PARKING, INC.; AIR PARK OF JFK INC.; and JOHN/JANE/ABC/XYZ DOES 1-10,<br><br>Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, ERNEST ALEXIS, through his counsel, alleges the following upon information and belief:

## 1. PRELIMINARY STATEMENT

1. Plaintiff ERNEST ALEXIS brings this action to recover unpaid straight-time wages, minimum wages, overtime wages, spread-of-hours pay, late-paid wages, statutory notice and statement damages, unlawful deductions, and retaliation damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), arising from his work as a parking attendant for Defendants' airport-parking operations in Queens, New York.

2. Plaintiff seeks all available unpaid wages, delayed wages, statutory damages, liquidated damages where permitted, retaliation damages, pre- and post-judgment interest where available, declaratory and equitable relief where appropriate, attorneys' fees, costs, and all other relief permitted by law.

## 2. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over Plaintiff's NYLL claims under 28 U.S.C. § 1367.

4. At all relevant times, Defendants constituted an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1). On information and belief, Defendants' annual gross volume of sales made or business done exceeded $500,000. Defendants operated for-profit airport-parking businesses serving travelers near JFK and LaGuardia Airports, accepted parking and reservation fees from the traveling public, employed multiple attendants, drivers, shuttle workers, customer-service workers, and other staff, publicly held themselves out as operating 24 hours per day and seven days per week, and used vehicles, telephones, fuel, the internet, reservation systems, websites, mobile-payment applications, office supplies, and other goods and instrumentalities that moved in interstate commerce.

5. Plaintiff also was individually engaged in commerce within the meaning of the FLSA. Among other things, Plaintiff serviced and moved vehicles for interstate and international travelers, received customers arriving for domestic and international flights, checked reservations generated through interstate communications and internet-based systems, communicated with supervisors and customers by phone and text, and handled instrumentalities and goods that had moved in interstate commerce.

6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred in this District, Defendants transacted business in this District, and Plaintiff worked in Queens County, New York

## 3. COLLECTIVE AND CLASS ACTION ALLEGATIONS

7. Plaintiff brings his FLSA claims as a collective action under 29 U.S.C. § 216(b) on behalf of himself and other similarly situated current and former non-exempt parking attendants, drivers, valets, shuttle drivers, lot attendants, and similarly situated parking workers employed by Defendants in New York at any time during the three years preceding the filing of this action through final judgment (the "FLSA Collective").

8. Plaintiff brings his NYLL claims, except retaliation and any claims not suitable for class treatment, as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all current and former non-exempt parking attendants, drivers, valets, shuttle drivers, lot attendants, and similarly situated parking workers employed by Defendants in New York at any time during the six years preceding the filing of this action through final judgment (the "NYLL Class").

9. The members of the FLSA Collective and NYLL Class are similarly situated because Defendants operated common or coordinated airport-parking businesses, used the same or overlapping job titles and duties, and, on information and belief, subjected workers to common wage and hour policies and practices, including paying straight time for overtime hours, failing to pay weekly manual-worker wages, failing to provide accurate wage notices and wage statements, making or claiming unlawful deductions, and using overlapping managers, worksites, and labor assignments across the enterprise.

10. Common questions include, among others: whether Defendants were an enterprise engaged in commerce; whether Defendants constituted a single integrated enterprise, joint employers, and/or alter egos; whether Defendants failed to pay minimum wages, overtime wages, spread-of-hours pay, and weekly wages as required by law; whether Defendants made unlawful deductions; whether Defendants failed to furnish compliant wage notices and statements; whether

Defendants maintained common policies or practices affecting parking workers across multiple locations; and the proper measure of damages and other relief.

11. A collective action and class action are superior to individual actions because the likely class members are numerous, their claims involve common questions of law and fact, and separate actions would create unnecessary duplication and risk inconsistent adjudications.

## 4. PARTIES

12. Plaintiff ERNEST ALEXIS is an adult individual.

13. Defendant Markens Nicolas ("Nicolas") is, upon information and belief, an individual residing in Nassau County, New York and/or at or near 738 Hastings Street, Baldwin, New York 11510. Nicolas hired Plaintiff, fired Plaintiff, supervised Plaintiff, scheduled Plaintiff, directed Plaintiff's work, determined Plaintiff's pay, threatened Plaintiff, and paid Plaintiff, including through informal electronic transfers.

14. Upon information and belief, Nicolas is or was the owner, manager, and/or principal contact for AirLot / Airlot Systems LLC and public materials associated with Prime Park identify Nicolas as the founder of Prime Park.

15. Defendant US Auto Storage LLC ("US Auto Storage") is a limited liability company that, upon information and belief, transacted business in New York, including in Queens County.

16. Upon information and belief, US Auto Storage as an active passenger carrier with a physical and mailing address at 220-12 147th Avenue, Springfield Gardens, New York 11413, a listed telephone number of (347) 425-3754, and multiple drivers.

17. Upon information and belief, US Auto Storage is "also known as Prime Park JFK."

18. Prime Park JFK operates at 151-15 Lefferts Boulevard, South Ozone Park, New York 11420.

19. Upon information and belief, US Auto Storage owned, operated, managed, controlled, leased, funded, staffed, and/or maintained Prime Park JFK; held itself out to the public under the Prime Park name directly or through agents; and employed, jointly employed, or otherwise exercised economic control over workers there, including Plaintiff.

20. Defendant Airlot Systems LLC ("Airlot Systems") is a limited liability company that, upon information and belief, transacted business in New York under the names AirLot, JFK AirLot, and/or EconoPark.

21. Defendant AirLot / Airlot Systems LLC operates at 133-98 142nd Street, South Ozone Park, New York 11436, identify Markens Nicolas as its owner or manager, and list the telephone number (347) 425-3754.

22. AirLot identifies Nicolas as AirLot's owner, and more recent public reporting concerning JFK EconoPark states that a worker provided Nicolas's name and number for the lot's manager and linked Nicolas to a related airport-parking LLC previously cited by the City. Upon information and belief, Airlot Systems owned, operated, managed, controlled, leased, funded, staffed, and/or maintained one or more AirLot- and/or EconoPark-branded parking facilities at which Plaintiff worked, including the LaGuardia EconoPark location, and employed, jointly employed, or otherwise exercised economic control over workers there, including Plaintiff.

23. Defendant JFK Long Term Parking, Inc. ("JFK Long Term Parking") is a corporation that, upon information and belief, transacted business in New York, including in Queens County. Publicly available business and regulatory listings identify JFK Long Term Parking as an active passenger carrier at 122-02 South Conduit Avenue, South Ozone Park, New York 11420, with the telephone number (718) 843-8400 and multiple drivers.

24. Defendants JFK Long Term Parking and US Auto Storage a/k/a Prime Park JFK appeared together in a New York transportation-related court proceeding.

25. JFK Long Term Parking's public materials direct customers seeking LaGuardia parking to AirparkParking.com.

26. Upon information and belief, JFK Long Term Parking was part of the same or an overlapping airport-parking enterprise and, directly or through affiliates, merged operations, joint operations, centralized reservations, common labor control, or successor operations, employed, jointly employed, or had the power to employ and control Plaintiff and similarly situated workers.

27. Defendant Air Park of JFK Inc. ("Air Park") is a corporation that, upon information and belief, transacted business in New York, including in Queens County.

28. Defendant Air Park of JFK Inc. operates at 153-44 South Conduit Avenue, Jamaica, New York 11434, with the telephone number (718) 276-7000.

29. Defendant Airpark Kennedy operates at that address and Airpark LaGuardia at 99-11 Ditmars Boulevard, East Elmhurst, New York 11369, with the telephone number (718) 898-8400.

30. Upon information and belief, Defendant Airpark JFK moved to or merged with JFK Long Term Parking, that Airpark reward points would continue to be honored there, and that a single employment posting covered airport-parking jobs at Air Park LGA/JFK and JFK Long Term Parking, directing JFK applicants to apply at JFK Long Term Parking and LGA applicants to apply at Air Park LGA.

31. Upon information and belief, Air Park was part of the same or an overlapping airport-parking enterprise and, directly or through affiliates, merged operations, joint operations, successor operations, common labor control, or centralized reservations and hiring, employed, jointly employed, or had the power to employ and control Plaintiff and similarly situated workers.

32. Defendants John/Jane/ABC/XYZ Does 1-10 are other natural persons or business entities who were Plaintiff's employers and/or joint employers under the FLSA and NYLL and

whose identities are not yet known, including without limitation the legal operator(s), lessor(s), licensee(s), manager(s), payroll processor(s), payor(s), funding entity or entities, and/or controlling person(s) of the EconoPark-branded LaGuardia location at 127-40 Willets Point Boulevard, any entity doing business as EconoPark at JFK and/or LaGuardia, and any entity associated with payments to Plaintiff from "usas."

33. At all relevant times, each Defendant acted directly or indirectly in the interest of the other Defendants with respect to Plaintiff, shared operational and/or economic control over the businesses at issue, and functioned as Plaintiff's employers and/or joint employers under the FLSA and NYLL.

34. Defendants were Plaintiff's employers under the FLSA and NYLL as a matter of economic reality, including under both the formal-control and functional-control tests.

35. Nicolas exercised formal control over Plaintiff because Nicolas hired Plaintiff, fired Plaintiff, supervised Plaintiff, scheduled Plaintiff, set or communicated Plaintiff's pay rate, directed Plaintiff's day-to-day work, determined whether Plaintiff worked alone or with a driver, threatened Plaintiff, and paid Plaintiff.

36. US Auto Storage exercised formal and operational control over Plaintiff because, upon information and belief, it operated or controlled Prime Park JFK, benefited directly from Plaintiff's work there, held itself out publicly as a passenger-transport and airport-parking business, had the power to hire and fire parking workers directly or through Nicolas and other agents, controlled or had the power to control schedules and staffing, processed or caused wages to be paid including through the payor designation "usas," and maintained or had the power to maintain employment and payroll records.

37. Airlot Systems exercised formal and operational control over Plaintiff because, upon information and belief, it operated or controlled AirLot- and/or EconoPark-branded parking

businesses, including the LaGuardia EconoPark location, benefited directly from Plaintiff's work there, acted through Nicolas and other agents, controlled or had the power to control schedules and staffing, processed or caused wages to be paid, and maintained or had the power to maintain employment and payroll records. Nicolas and the (347) 425-3754 number are connected to EconoPark-branded airport-parking operations, further supporting Airlot Systems' role as one of Plaintiff's employers.

38. JFK Long Term Parking and Air Park also exercised employer control over Plaintiff, at least jointly and in the alternative, because, upon information and belief, they were part of the same integrated airport-parking enterprise, shared or merged operations, reservation systems, facilities, business infrastructure, labor control, and/or management with the other Defendants, had the power to control the terms and conditions of Plaintiff's employment directly or indirectly, and benefited from Plaintiff's labor in supporting the airport-parking enterprise. Publicly available hiring materials advertising positions at "Air Park LGA/JFK and JFK Long Term Parking Inc." and directing applicants to affiliated JFK and LGA locations further support common labor relations and operational control.

39. Defendants also exercised functional control over Plaintiff. Plaintiff worked entirely on premises owned, operated, leased, licensed, or controlled by Defendants; used Defendants' lots, customer reservations, vehicles, forms, phones, and business infrastructure; performed work integral to Defendants' core airport-parking business; had no opportunity for profit or loss independent of Defendants' labor needs; and was shifted between or among Defendants' locations as staffing needs required.

40. Plaintiff's work as a parking attendant and driver was integral to Defendants' airport-parking enterprise. Without attendants and drivers to receive customers, process reservations, move

cars, manage lots, and assist travelers, Defendants could not provide the services for which they charged the traveling public.

41. At all relevant times, Defendants jointly employed Plaintiff and are jointly and severally liable for the wages and damages sought herein.

42. Defendants shared a common business purpose: operating off-airport parking, valet, shuttle, vehicle-storage, and related customer-service businesses for air travelers using JFK and LaGuardia Airports.

43. On information and belief, Defendants used overlapping or coordinated trade names, lots, phone numbers, websites, booking platforms, customer bases, shuttle or transportation services, and labor. Publicly available records tie US Auto Storage to Prime Park JFK; Airlot Systems and Nicolas to AirLot and EconoPark-branded operations using the (347) 425-3754 number; JFK Long Term Parking to Airpark's LaGuardia platform; and Air Park to both Airpark JFK and Airpark LaGuardia, including public statements that Airpark JFK moved to or merged with JFK Long Term Parking and that Airpark reward points would be honored there.

44. On information and belief, Defendants also shared or centralized management and labor relations. Nicolas hired, fired, supervised, scheduled, and paid Plaintiff across multiple locations; workers performed the same or similar duties across the enterprise; and the corporate defendants, directly or through Nicolas and other agents, controlled or had the power to control assignments, staffing, hours, pay practices, and recordkeeping. Upon information and belief, Defendants are affiliated through centralized or coordinated labor relations.

45. On information and belief, the corporate defendants were operationally interdependent and functioned as a single integrated enterprise, alter egos, and/or joint employers. They shared or coordinated management, labor, reservations, websites, airport-parking branding, customer interfaces, reward programs, shuttle or transportation functions, and/or physical

worksites. To the extent any Defendant contends otherwise, Plaintiff pleads these relationships in the alternative and seeks discovery regarding ownership, management, payroll, reservations, dispatch, financing, licensing, staffing, and branding relationships among the named defendants and Doe defendants.

**5. FACTUAL ALLEGATIONS**

46. Defendants operated airport-parking businesses in Queens, New York, including Prime Park JFK at 151-15 Lefferts Boulevard, South Ozone Park, New York 11420, and an EconoPark-branded LaGuardia parking operation at 127-40 Willets Point Boulevard, Flushing, New York 11368.

47. On information and belief, Defendants also marketed and staffed related airport-parking operations under the Airpark, AirLot, EconoPark, JFK Long Term Parking, and Prime Park names.

48. Plaintiff was employed by Defendants as a parking attendant from approximately December 22, 2024 through March 30, 2025.

49. Plaintiff's duties included receiving customers, checking reservations, filling out parking registration forms, parking customers' cars in Defendants' lots, and, at times, also working as a driver.

50. There ordinarily were two workers assigned to the lot - a driver and Plaintiff - but Defendants sometimes required Plaintiff to do both jobs alone. During the final three pay periods of Plaintiff's employment, Defendants made Plaintiff work extensive additional hours and, at times, required him to perform both attendant and driver functions during the same shift.

51. Plaintiff's regular schedule was approximately twelve (12) hours per day, four days per week, for approximately forty-eight hours per week, not including additional shifts and call-ins.

52. In February and March 2025, Plaintiff regularly worked additional overnight hours—approximately twelve (12) additional hours per week and more when he was required to come in on his day off.

53. Defendants agreed to pay Plaintiff $16.50 per hour.

54. Defendants did not pay Plaintiff at one and one-half times his regular rate for hours worked over forty in a workweek. Instead, when Plaintiff was paid, Defendants seemed to pay straight time for all hours worked to the extent Plaintiff was paid.

55. Defendants sometimes withheld amounts described as "taxes" from Plaintiff's wages, yet Defendants did not provide Plaintiff with compliant wage statements showing the basis for the deductions, the employer's current legal name and address, the regular and overtime rates, or the number of hours worked at each rate.

56. Defendants paid Plaintiff irregularly and informally, including by cash, Zelle, and/or Cash App. One or more payments were sent from a payor identified to Plaintiff only as "usas," which, upon information and belief, referred to US Auto Storage and/or an affiliated entity or account used by Defendants.

57. Plaintiff did not receive wages on the weekly basis required for manual workers. Instead, Defendants paid him, at best, sporadically and on a purported biweekly basis, and they also delayed payment for earned wages.

58. From the beginning of Plaintiff's employment through approximately February 15, 2025, the first three deposits Plaintiff received were on or about February 6, 2025, March 1, 2025, and March 7, 2025, notwithstanding that he had already worked substantial hours before those payments.

59. Each time Plaintiff asked to be paid, Defendants told him, in substance, "next week" and failed to timely pay all earned wages.

60. On March 30, 2025, Plaintiff complained about unpaid wages. In response, Nicolas revoked Plaintiff from work, terminated him, and threatened him with deportation.

61. Defendants failed to keep, furnish, and/or preserve accurate records of Plaintiff's hours worked and wages paid, including accurate records reflecting his overtime hours, spread-of-hours days, deductions, pay rates, dates of payment, the legal identity of the entity or entities paying him, and the specific entities responsible for the lots at which he worked.

## 6. CAUSES OF ACTION

### 6.1. FLSA MINIMUM WAGE

62. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

63. Defendants violated the FLSA, 29 U.S.C. § 206, by failing to pay Plaintiff minimum wages for all hours worked in one or more workweeks, including during periods when Plaintiff worked but was not paid at all or was only partially paid for his labor.

64. Defendants' failure to pay minimum wages was willful. Plaintiff is entitled to recover all unpaid minimum wages, liquidated damages, attorneys' fees, and costs under the FLSA.

### 6.2. FLSA OVERTIME

65. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

66. Defendants violated the FLSA, 29 U.S.C. § 207, by failing to pay Plaintiff overtime compensation at one and one-half times his regular rate of pay for hours worked in excess of forty in a workweek.

67. Defendants paid Plaintiff, at best, straight time for overtime hours and failed to pay any overtime premium. These violations were willful. Plaintiff is entitled to recover all unpaid overtime wages, liquidated damages, attorneys' fees, and costs under the FLSA.

### 6.3. NEW YORK LABOR LAW MINIMUM WAGE

68. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

69. Defendants violated the NYLL and the applicable Minimum Wage Order by failing to pay Plaintiff minimum wages for all hours worked in one or more workweeks.

70. Plaintiff is entitled to recover all unpaid minimum wages, liquidated damages, pre-judgment interest, attorneys' fees, costs, and all other available relief under the NYLL.

### 6.4. NEW YORK LABOR LAW OVERTIME

71. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

72. Defendants violated the NYLL and the applicable wage order by failing to pay Plaintiff overtime compensation at one and one-half times his regular rate for each workweek in which Plaintiff worked more than forty hours.

73. Plaintiff is entitled to recover all unpaid overtime wages, liquidated damages, pre-judgment interest, attorneys' fees, costs, and all other available relief under the NYLL.

### 6.5. NEW YORK LABOR LAW SPREAD OF HOURS

74. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

75. Defendants violated the NYLL and the applicable wage order by failing to pay Plaintiff an additional hour of pay at the basic minimum hourly wage rate on each day when Plaintiff's spread of hours exceeded ten.

76. Plaintiff regularly worked shifts from approximately 10:00 a.m. until 10:00 p.m. and, in February and March 2025, also worked extended overnight shifts causing his spread of hours to exceed ten. Plaintiff is entitled to recover all unpaid spread-of-hours wages, liquidated damages, pre-judgment interest, attorneys' fees, costs, and all other available relief under the NYLL.

### 6.6. NEW YORK LABOR LAW § 191(1)(a) (MANUAL WORKER FREQUENCY OF PAY)

77. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

78. Plaintiff was a manual worker within the meaning of NYLL § 191 because Plaintiff's principal duties included parking and moving vehicles and performing other physical labor for Defendants' parking operations.

79. Defendants violated NYLL § 191(1)(a) by failing to pay Plaintiff weekly and not later than seven calendar days after the end of the week in which wages were earned.

80. Plaintiff seeks all remedies available by law for those pay-frequency violations, including delayed wages, statutory or liquidated relief where permitted, pre-judgment interest, attorneys' fees, costs, and such other relief as may be authorized.

### 6.7. NEW YORK LABOR LAW § 195(1) (WAGE NOTICE)

81. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

82. Defendants violated NYLL § 195(1) by failing to furnish Plaintiff, at the time of hiring and within required intervals, a written wage notice in English and in Plaintiff's primary language stating, among other things, the rate or rates of pay, the basis thereof, the overtime rate, allowances claimed, the regular pay day, and the employer's correct legal name, address, and telephone number.

83. Defendants' failure to provide a compliant wage notice caused Plaintiff concrete informational and downstream harm. Plaintiff was paid informally and irregularly, including from a payor identified only as "usas," while amounts described as "taxes" were withheld. Because Defendants did not provide the required notice identifying the true employer, payor, rate, deduction, and regular pay day, Plaintiff could not determine during his employment whether he was being paid at the promised rate, whether the deductions were lawful, whether purported tax withholdings were being remitted, who the actual payor/employer was, or how much overtime and spread-of-hours pay he was owed. Plaintiff therefore had to spend time and effort after termination reconstructing

his hours and pay from memory, messages, and transfer records, and his ability to promptly identify and pursue the responsible employer entities was delayed and hindered.

84. Plaintiff is entitled to recover statutory damages, attorneys' fees, costs, and all other available relief under the NYLL.

### 6.8. NEW YORK LABOR LAW § 195(3) (WAGE STATEMENTS)

85. Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

86. Defendants violated NYLL § 195(3) by failing to furnish Plaintiff with accurate wage statements with each payment of wages. Among other things, Defendants failed to provide accurate statements showing the dates of work covered, rates of pay, hours worked, gross wages, deductions, net wages, and the correct legal name, address, and telephone number of the employer.

87. Defendants' failure to furnish accurate wage statements caused Plaintiff concrete informational and downstream harm. Without contemporaneous and accurate wage statements, Plaintiff lacked the information necessary to verify whether Defendants had paid him for all hours worked, whether he had been paid overtime and spread-of-hours wages, whether amounts labeled as taxes were actually deducted and accounted for lawfully, whether the correct employer had paid him, and whether those wages had been properly documented for tax-reporting purposes. As a result, Plaintiff was hindered in monitoring his compensation during employment, delayed in detecting with specificity his wage shortfalls, and forced after termination to spend time and effort reconstructing his hours, deductions, and underpayments from incomplete records.

88. Plaintiff is entitled to recover statutory damages, attorneys' fees, costs, and all other available relief under the NYLL.

### 6.9. NEW YORK LABOR LAW § 193 (UNLAWFUL DEDUCTIONS)

89. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

90. Defendants made deductions from Plaintiff's wages described as "taxes" without providing the information and records required by law and, upon information and belief, by making one or more deductions that were not authorized deductions under the NYLL.

91. Plaintiff is entitled to recover all unlawfully deducted wages, liquidated damages where available, pre-judgment interest, attorneys' fees, costs, and all other available relief under the NYLL.

**6.10. <u>FLSA RETALIATION</u>**

92. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

93. Plaintiff engaged in protected activity under the FLSA by complaining to Defendants about unpaid wages, late wages, and being required to work alone while performing multiple jobs.

94. Defendants retaliated against Plaintiff because of that protected activity by, among other things, terminating him on or about March 30, 2025 and threatening him with deportation.

95. Defendants' retaliation violated 29 U.S.C. § 215(a)(3). Plaintiff is entitled to recover all damages and relief available for retaliation, including lost wages, compensatory damages, liquidated damages and/or civil penalties where authorized, equitable relief, attorneys' fees, costs, and all other available relief.

**6.11. <u>NEW YORK LABOR LAW § 215 (RETALIATION)</u>**

96. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein.

97. Plaintiff made complaints to Defendants about unpaid wages and objected to being required to perform attendant and driver work alone without adequate staffing.

98. Defendants discharged Plaintiff and threatened him with deportation because he complained about wages and work conditions.

99. Defendants' conduct violated NYLL § 215. Plaintiff is entitled to recover all damages and relief available under the NYLL for retaliation, including lost wages, front pay or reinstatement

where appropriate, liquidated damages, civil penalties where available, pre-judgment interest where available, attorneys' fees, costs, and all other available relief.

**7. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against Defendants, jointly and severally, and seeks the following relief:

A. certification of the FLSA Collective and authorization to send notice under 29 U.S.C. § 216(b);

B. certification of the NYLL Class under Rule 23;

C. all unpaid straight-time wages, agreed compensation, minimum wages, overtime wages, spread-of-hours wages, delayed wages, unlawfully deducted wages, and all other unpaid compensation found to be due;

D. liquidated damages under the FLSA and/or NYLL to the fullest extent permitted by law;

E. statutory damages under NYLL §§ 195(1) and 195(3);

F. damages, penalties, equitable relief, and all other remedies available for retaliation under the FLSA and NYLL;

G. pre- and post-judgment interest where permitted by law;

H. reasonable attorneys' fees and costs; and

I. such other and further relief as the Court deems just and proper

**8. JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 30, 2026
Astoria, New York

Respectfully submitted,

*/s/ Clifford Tucker,*
Clifford Tucker, Esq.
Sacco & Fillas LLP
31-19 Newtown Ave., 7th Floor
Astoria, New York 11102

Phone: 718-269-2243
CTucker@SaccoFillas.com

# CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under each and every federal and state wage and hour law, rule and regulation which may include but is not limited to the federal Fair Labor Standards Act, New York Labor Law, New Jersey Wage and Hour Law, and any other applicable law, rule, regulation, and wage order. If I am not a named Plaintiff(s), I authorized the named Plaintiffs to make all decisions involving this litigation and settle this action on behalf. I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Name: **Alexis Ernest**

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature: Alexis Ernest
Alexis Ernest (Apr 11, 2025 17:32 EDT)

Date: **April 11, 2025**